1

2

3

4                        UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6                          SAN FRANCISCO DIVISION

7

8    D.W.,[1]                              Case No.  23-cv-06189-PHK

9                  Plaintiff,

10          v.                             **ORDER REMANDING CASE**

11   LELAND DUDECK, Acting Commissioner
     of Social Security,[2]

12
                   Defendant.
13

14          Plaintiff D.W. ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C.

15   § 405(g) ("the Act"), seeking judicial review of a final decision by the Acting Commissioner of

16   the Social Security Administration, Defendant Leland Dudeck ("Commissioner"), denying his

17   applications for disability insurance benefits and supplemental security income.  [Dkt. 1].  The

18   Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry

19   of final judgment, under 28 U.S.C. § 636(c).  [Dkt. 6; Dkt. 7].  Plaintiff has filed an Opening

20   Brief, the Commissioner has filed a Response Brief, and Plaintiff has filed a Reply Brief.  [Dkt.

21   16; Dkt. 18; Dkt. 20].  The Commissioner has also filed the Administrative Record.  [Dkt. 8; Dkt.

22   13].

23

24   ---

[1] In actions involving requested review of a decision by the Commissioner of the Social Security
25   Administration, the Court generally uses the first name and initial of last name (or just both initials)
     of the Plaintiff in the Court's public orders out of an abundance of caution and regard for the
26   Plaintiff's potential privacy concerns.

27   [2] This lawsuit was initially filed against Kilolo Kijakazi, who was then the Acting Commissioner of
     the Social Security Administration.  *See* Dkt. 1.  Pursuant to Federal Rule of Civil Procedure 25(d),
28   Leland Dudeck, who is the current Acting Commissioner of the Social Security Administration as
     of the date of this Order, is "automatically substituted" as Defendant.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   After carefully analyzing the briefs, the record, and the applicable law, the Court

2   **REVERSES** the Commissioner's final decision and **REMANDS** for further proceedings

3   consistent with this Order.

4                                   **BACKGROUND**

5   The following background focuses only on the factual matters and procedural history that

6   are relevant to the Court's analysis herein.

7   Plaintiff was born on December 23, 1965; he was thirty-eight years old on the alleged

8   disability onset date.  [AR 87].  He speaks English and has a high school diploma.  [AR 587-88].

9   His employment history includes positions as a construction worker, a delivery driver, a cook, and

10  a warehouse worker.  [AR 92-93, 567-78].

11  On September 27, 2010, Plaintiff filed an application for a period of disability and

12  disability insurance benefits, pursuant to Title II of the Act, as well as an application for

13  supplemental security income, pursuant to Title XVI of the Act.  [AR 507-21].  In his applications,

14  Plaintiff alleged that he had been unable to work, since June 30, 2004, due to "major back

15  problems 2 two [sic] rods in back, right eye[.]"  [AR 87].  Plaintiff later supplemented his

16  applications to allege that he was unable to work, since December 2010, due to worsening

17  headaches.  [AR 88].  The Commissioner denied Plaintiff's applications, initially on April 29,

18  2011, and upon reconsideration on September 23, 2011.  [AR 12].

19  Plaintiff then successfully requested a hearing before an Administrative Law Judge

20  ("ALJ").  Hearings took place on March 8, 2012 and October 2, 2012 before ALJ Richard

21  Laverdure.  [AR 36-64].  Plaintiff appeared and testified at both hearings, *pro se* at the March 8,

22  2012 hearing, and then represented by counsel at the October 2, 2012 hearing.  *Id.*  At the October

23  2, 2012 hearing, the ALJ also heard testimony from a Vocational Expert.  [AR 41-46].

24  On November 19, 2012, the ALJ issued a written decision denying Plaintiff's applications,

25  and on January 28, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ's

26  decision.  [AR 71-84].

27  Subsequently, the Parties stipulated—pursuant to the terms of a class action settlement

28  agreement reached in *Hart v. Colvin*, No. 4:15-cv-00623-JST (N.D. Cal.)—that the

2

1    Commissioner's decision be reversed and remanded for further administrative proceedings. *See*

2    AR 12. The purpose of these further administrative proceedings was to determine whether

3    Plaintiff was disabled within the meaning of the Act during the period from the alleged onset date,

4    June 30, 2004, up to the prior date of adjudication, November 19, 2012. In accordance with the

5    terms of the *Hart* settlement agreement, the consultative examination report prepared by Frank

6    Chen, M.D., was excluded from the record.

7          Hearings were then held on September 30, 2021 and December 7, 2022 before ALJ E.

8    Alis. [AR 1125-82]. Plaintiff appeared and testified at both hearings, accompanied by a non-

9    attorney representative. *Id.* The ALJ also heard testimony at the September 30, 2021 hearing

10   from a Vocational Expert. [AR 1175-82]. Medical opinions were provided by an examining

11   internal medicine physician, Dr. Rose Lewis; an examining physical medicine and rehabilitation

12   specialist, Dr. Calvin Pon; and a non-examining state agency physician, Dr. M.L. Rees. [AR 887-

13   94, 900-02, 1115-24].

14         At the September 30, 2021 and December 7, 2022 hearings, Plaintiff testified that he

15   suffered from chronic, progressively worsening back pain stemming from a 1998 work-related

16   injury. [AR 1132, 1159, 1162]. Plaintiff testified that he underwent spinal fusion surgery, but he

17   denied that the procedure resulted in any improvement to his condition. [AR 1164-65]. Plaintiff

18   testified that he experienced pain every day, describing the pain's severity as "[a]bout a seven,

19   eight" out of ten. [AR 1138]. He testified that the pain shot from his neck down bilaterally to his

20   feet. [AR 1157]. He testified that he experienced constant numbness in his lower back. [AR

21   1168]. Plaintiff testified that, due to the pain, he was able to sit or stand continuously for no more

22   than fifteen to twenty minutes at a time. [AR 1133]. He testified that, on a good day, he was able

23   to walk one hundred yards, and, on a bad day, only fifty yards. [AR 1168]. He testified that he

24   had difficulty bending over. [AR 1134].

25         Plaintiff testified that, due to the physical injury from a 2007 bullet wound to his head, he

26   is completely blind in his right eye. [AR 1171]. Plaintiff testified that he lacks peripheral vision

27   and struggles with depth perception and balance. [AR 1135-36]. Plaintiff testified that he also

28   suffers from "excruciating headaches" caused by his visual impairments. [AR 1136, 1171]. He

United States District Court
Northern District of California

United States District Court
Northern District of California

1    told the ALJ that he experiences these "severe" headaches "all day." [AR 1171].

2         Plaintiff testified that he has been homeless since around 2006 or 2007. [AR 1166]. He

3    told the ALJ that he has no income aside from government assistance. *Id.* Plaintiff testified that,

4    on a typical day, he does "[n]othing" except "wait[] for the pain to leave." [AR 1137]. He told

5    the ALJ that he often lays on a park bench or sits against a car "where it's warm" to alleviate his

6    back pain. [AR 1138, 1167].

7         At the September 30, 2021 hearing, Plaintiff admitted that, from 2016 to 2018, he worked

8    in a warehouse distribution facility as a void filler, package filler, and crate stacker. [AR 1155].

9    Plaintiff testified that he took the job, notwithstanding his physical impairments, because he

10   "needed to survive." [AR 1157]. Plaintiff testified that he intended to work full-time, but because

11   he "couldn't stand up for too long on the job" and would often need to "take off early" to rest, he

12   ultimately worked only twenty hours per week. [AR 1158]. Plaintiff testified that he quit the job

13   after sustaining a work-related injury to his shoulder in February 2017. [AR 1156].

14        At the December 7, 2022 hearing, Plaintiff's non-attorney representative urged the ALJ to

15   review the opinion from consulting physician, Dr. Lewis, regarding her 2022 examination of

16   Plaintiff. The ALJ responded that they would consider the opinion, noting that "given the finding

17   of the consultative examination, it's possible that [Plaintiff] could be found disabled now." [AR

18   1139]. However, the ALJ stressed that, pursuant to the terms of the *Hart* settlement agreement,

19   the ALJ's review was "really going to be limited to the period of time from the alleged onset date

20   to the prior date of adjudication." *Id.*

21        On January 25, 2023, the ALJ issued a written decision which followed the

22   Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's

23   applications. [AR 12-20]. The five-step analysis requires the ALJ to consider whether the

24   claimant: (1) has engaged in "substantial gainful activity" during the alleged period of disability;

25   (2) has a medically determinable impairment or combination of such impairments that is "severe;"

26   (3) has a condition that meets or equals the severity of a listed impairment; (4) has the residual

27   functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other

28   work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v.*

1    *Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).

2        In the January 25, 2023 written decision, the ALJ determined, at step one, that Plaintiff had

3    not engaged in substantial gainful employment during the relevant period, from June 30, 2004

4    through November 19, 2012.  [AR 14].  At step two of the analysis, the ALJ found that Plaintiff

5    had the following severe impairments: "right eye blindness; status post gunshot wound; status post

6    lumbar laminectomy, discectomy, and fusion at L5-S1 with hardware placement[.]"  [AR 15].  The

7    ALJ also found evidence of "treatment for a thumb fracture in June or July 2008," but noted that

8    Plaintiff subsequently "reported that it was 'a case of mistaken identity' and that he did not receive

9    treatment for a thumb injury."  *Id.*  None of Plaintiff's impairments, alone or in combination, were

10   found to be presumptively disabling at step three.  *Id.*

11       Prior to reaching step four, the ALJ assessed Plaintiff's RFC and found him capable of

12   light work, subject to the following limitations:

> [H]e can lift or carry 20 pounds occasionally and 10 pounds frequently, stand 6
> hours in an 8-hour workday, walk 6 hours in an 8-hour workday, and sit 6 hours in
> an 8-hour workday.  He can push or pull as much as he can lift or carry.  The
> claimant cannot work at unprotected heights or around workplace hazards that pose
> a threat to life or limb.  He cannot perform work requiring depth perception.  The
> claimant requires the ability to alternate between sitting and standing periodically
> throughout the workday as needed so long as he is not off task or need [sic] to leave
> the workstation while doing so.  He cannot climb ladders, ropes, or scaffolds.  He
> can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl.

18   [AR 16].

19       In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of his pain

20   and other symptoms, the objective medical evidence, and the medical opinion evidence.  [AR 16-

21   18].  The ALJ determined that, while Plaintiff's medically determinable impairments could

22   reasonably be expected to cause his asserted symptoms, Plaintiff's testimony regarding the

23   intensity, persistence, and limiting effects of the symptoms was "not entirely consistent" with the

24   overall record "at all times relevant" to the decision.  [AR 17].  The ALJ likewise concluded that

25   the overall record, though supportive of some functional limitations, did not support the existence

26   of limitations greater than those set forth in the RFC assessment.

27       In reaching these conclusions, the ALJ evaluated the medical opinion evidence.  The ALJ

28   first discussed Dr. Pon's opinion regarding his February 11, 2009 examination of Plaintiff.  [AR

United States District Court
Northern District of California

17]; *see* AR 900-02.  The ALJ summarized Dr. Pon's findings and determinations: that Plaintiff

could lift and carry twenty pounds occasionally and ten pounds frequently; that he can sit, stand,

and/or walk six hours in an eight-hour workday; that he can occasionally stoop, crouch, kneel,

squat, climb ladders, and crawl; and that he can frequently climb stairs and perform pushing

leg/foot controls.  [AR 17].  The ALJ determined that the exertional limitations opined by Dr. Pon

were "consistent with the evidence related to the back," but ultimately accorded the opinion only

"partial weight" because Dr. Pon did not include any limitations relating to Plaintiff's right eye

blindness caused by the gunshot wound.  *Id.*

The ALJ next discussed Dr. Rees's opinion.  [AR 17-18]; *see* AR 887-94.  The ALJ

summarized Dr. Rees' findings and determinations: that Plaintiff "could lift and/or carry 50

pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour

workday, and sit about 6 hours in an 8-hour workday."  [AR 17-18].  The ALJ gave this opinion

"partial weight" as follows:

> [Dr. Rees'] limitations are not entirely consistent with the underlying evidence.
> The progress notes and the consultative examination report show lumbar fusion
> with ongoing pain symptoms affecting the lower back.  Dr. Pon's examination
> showed reduced motor and range of motion in the hips secondary to back pain.  The
> impairment reasonably limits the claimant to light exertional work activity with
> some postural limitations.  I am including the ability to alternate between sitting
> and standing periodically throughout the workday to ensure there is no exacerbation
> of back pain symptoms.  I also disagree with Dr. Rees' failure to include any
> specific limitations for vision impairment.

[AR 18].

Next, after noting that the record contained "various limitations/work modifications from

workers compensation providers" that were given "little weight" because they did not relate to the

relevant time period, the ALJ discussed Dr. Lewis's opinion regarding her June 14, 2022

examination of Plaintiff.  [AR 18]; *see* AR 1115-24.  The ALJ found that Dr. Lewis's opinion—

which limited Plaintiff to a range of sedentary activity—provided evidence that Plaintiff's

condition "ha[d] deteriorated."  [AR 18].  However, the ALJ gave Dr. Lewis's opinion "little

weight," because it was "based on clinical findings well after the relevant period (nearly a

decade)," and thus, "not relevant" to whether Plaintiff was disabled during the relevant period.  *Id.*

Finally, the ALJ discussed Plaintiff's own testimony regarding the limiting effects of his

United States District Court
Northern District of California

1    conditions.  [AR 18].  The ALJ found that Plaintiff's testimony regarding "significantly

2    compromised standing/walking tolerance" was "inconsistent with the progress notes and Dr. Pon's

3    examination, showing little to no strength deficits affecting the lower extremities."  *Id.*  The ALJ

4    also cited a December 2010 function report, in which Plaintiff admitted to washing "a car or 2"

5    each day.  *Id.* (citing AR 796).  In addition, the ALJ referenced Plaintiff's testimony from the

6    September 2021 hearing and summarized that testimony as follows:

7
> At the September 2021 hearing, the claimant testified he was able to work from
8    2016 to 2018 in a warehouse as a void filler, package filler, and crate stacker.  He
> stopped working due to a shoulder injury sustained after lifting ten crates over his
9    head.  He reported no problems walking or standing while working and he was able
> to successfully work at a much higher exertional level than that called for in the
10   [RFC] assessed herein.

11   *Id.*

12       At step four, the ALJ determined, based on the Vocational Expert's testimony, that

13   Plaintiff was unable to perform any past relevant work.  [AR 18-19].

14       Prior to reaching step five, the ALJ determined that Plaintiff was "defined as a younger

15   individual age 18-49, on the alleged disability onset date;" that Plaintiff "has at least a high school

16   education;" and that transferability of job skills was "not material" to the disability determination.

17   [AR 19].

18       At step five, the ALJ found that, considering Plaintiff's age, education, work experience,

19   and RFC, "there are jobs that exist in significant numbers in the national economy" that Plaintiff

20   can perform.  *Id.*  The ALJ determined that Plaintiff would be able to perform such

21   "representative" jobs as a sorter, bagger, or basket filler.  [AR 19-20].  For that reason, the ALJ

22   concluded that Plaintiff was not under a "disability," as defined by the Act, and denied Plaintiff's

23   applications for benefits.  [AR 20].  That denial prompted Plaintiff's request for judicial review.

24   *See* Dkt. 1; AR-3.

25                              **STANDARD OF REVIEW**

26       A district court has the "power to enter, upon the pleadings and transcript of the record, a

27   judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

28   with or without remanding the case for a hearing."  42 U.S.C. § 405(g).  The Court's review in

United States District Court
Northern District of California

1    such cases is limited to determining: (1) whether substantial evidence supports the

2    Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant

3    legal standards. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We

4    will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal

5    standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th

6    785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

7            "Substantial evidence" is "more than a mere scintilla"—it is "such relevant evidence as a

8    reasonable mind might accept as adequate to support a conclusion. *Woods*, 32 F.4th at 788

9    (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "Overall, the standard of review is highly

10   deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*,

11   807 F.3d 996, 1002 (9th Cir. 2015)); *see Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of

12   'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). In

13   evaluating whether substantial evidence supports a finding, the Court "must review the

14   administrative record as a whole, weighing both the evidence that supports and the evidence that

15   detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

16   1998). Any conflict in the evidence is to be resolved by the ALJ, and not the Court. *Smartt v.

17   Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one

18   rational interpretation, the ALJ's decision must be affirmed.").

19                                      **ANALYSIS**

20           As summarized above, the ALJ's January 25, 2023 written decision under review followed

21   the Commissioner's five-step, sequential evaluation process for determining the merits of

22   Plaintiff's applications. [AR 12-20]; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). It is well-

23   settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of

24   disability at steps one through four. *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

25   1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)). The

26   burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient

27   RFC to perform work in the national economy, given the claimant's age, education, and work

28   experience. *Id.*

1    A finding that a claimant is "disabled" or "not disabled" at any point in the five-step

2    review is conclusive and terminates the analysis. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

3    1999) (citing 20 C.F.R. § 404.1520).  To be disabling, the claimant's condition must be so

4    functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive

5    months.  42 U.S.C. §§ 423(d)(1)(A), (2)(A).

6    Plaintiff challenges the ALJ's decision on several grounds.  Plaintiff argues, first, that the

7    ALJ's RFC determination is not supported by substantial evidence, because the ALJ failed to

8    incorporate or otherwise address any limitations from headaches. [Dkt. 16 at 6-7].  Next, Plaintiff

9    argues that the ALJ's specific RFC finding—that Plaintiff "requires the ability to alternate

10   between sitting and standing periodically throughout the workday as needed . . . to ensure there is

11   no exacerbation of back pain symptoms"—is "conclusory" and "unsupported" by medical

12   evidence or the overall record.  *Id.* at 8.  Third, Plaintiff argues that the ALJ improperly evaluated

13   his subjective allegations regarding pain and other limitations.  *Id.* at 9-12.  Finally, Plaintiff

14   argues that the ALJ erred at step five of the analysis by adopting Vocational Expert testimony that

15   was "unreliable," and thus, not supported by substantial evidence.  *Id.* at 12-18.

16   The Commissioner argues in response that the ALJ properly considered the entire

17   evidentiary record and followed the applicable, controlling law in determining that Plaintiff is not

18   disabled for purposes of the Act.  [Dkt. 18 at 6-18].

19   **I.    Limitations Due to Headaches**

20   Plaintiff's first asserted ground for error is that the ALJ's RFC determination is not

21   supported by substantial evidence, because the ALJ failed to discuss or otherwise analyze the

22   extent to which Plaintiff is limited by headaches.  [Dkt. 16 at 6-7].

23   "At step two of the disability analysis, the ALJ must determine whether the claimant has

24   any 'severe medically determinable' impairments." *Ferguson v. O'Malley*, 95 F.4th 1194, 1198

25   (9th Cir. 2024) (quoting 20 C.F.R. § 416.920(a)(4)(ii)).  "A 'severe impairment' is one that

26   significantly limits a claimant's ability to perform basic work activities."  *Id.* (quoting 20 C.F.R. §

27   416.920(c)).  "[B]asic work activities" are defined as "the abilities and aptitudes necessary to do

28   most jobs," which include physical functions such as walking, standing, sitting, pushing, and

United States District Court
Northern District of California

9

1    carrying, and mental functions such as understanding and remembering simple instructions,

2    responding appropriately in a work setting, and dealing with changes in a work setting.  20 C.F.R.

3    §§ 404.1522(b), 416.922(b).  "An impairment is not severe if it is merely 'a slight abnormality (or

4    combination of slight abnormalities) that has no more than a minimal effect on the ability to do

5    basic work activities.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-

6    3(p)).  The step-two inquiry is "merely a threshold determination meant to screen out weak

7    claims."  *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 48 U.S.

8    137, 146-47 (1987)).

9            Once the ALJ finds that the claimant has at least one severe impairment at step two, the

10   ALJ must consider all of the claimant's impairments when formulating the claimant's RFC at step

11   four, including those impairments the ALJ determined to be non-severe.  *Buck*, 869 F.3d at 1048-

12   49.  An RFC must account for *all* of a claimant's medically determinable impairments (whether

13   severe or non-severe) and must reflect the total limiting effects of all such impairments.  20 C.F.R.

14   §§ 404.1545(e), 416.945(e); *Buck*, 869 F.3d at 1049; *see also* SSR 96-8p, 1996 WL 374184, at *5

15   ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an

16   individual's impairments, even those that are not 'severe.'").

17           While the regulations require the ALJ to *consider* the limiting effects of all impairments

18   (both severe and non-severe) in assessing the RFC, they do not require the ALJ to translate every

19   non-severe impairment into a functional limitation in the RFC.  *D.L.P. v. Kijakazi*, No. 21-cv-

20   00792-VKD, 2022 WL 4472064, at *3 (N.D. Cal. Sept. 26, 2024) (citations omitted).  "Provided

21   the ALJ does not rely on boilerplate language, but actually reviews the record and specifies

22   reasons supported by substantial evidence for not including the non-severe impairment, the ALJ

23   has not committed legal error."  *Id.* (citation omitted).

24           In the written decision, the ALJ determined, at step two, that Plaintiff has severe

25   impairments, including right eye blindness and back impairment.  [AR 15].  The ALJ then

26   determined that Plaintiff was able to perform light work (subject to certain limitations), and that he

27   was capable of performing jobs such as a sorter, bagger, or basket filler.  [AR 16-20].

28           In reaching these conclusions, the ALJ specifically noted that Plaintiff also alleged

1    disability based on headaches.  [AR 16 ("The claimant alleged disability based on back

2    impairment, right eye impairment, and headaches.")].  However, the ALJ failed to categorize

3    Plaintiff's headaches as a severe or non-severe impairment that affected his RFC, or otherwise

4    discuss the extent to which Plaintiff's testimony regarding limitations from headaches was

5    supported by other evidence in the record.  The ALJ's written decision acknowledges that Plaintiff

6    "testified that he experienced severe headaches since being shot in the right eye" and that a

7    September 2012 treatment record contained Plaintiff's complaints of "headaches since the June

8    2008 gunshot injury."  [AR 16-17].  However, the ALJ's written decision does not analyze

9    whether the headaches were severe or non-severe impairments, and does not explicitly make a

10    finding on whether the headaches were medically determinable impairments (although the written

11    decision's reference to the September 2012 treatment record would appear to imply that they are

12    medically determinable).

13         The record contains corroborated evidence regarding Plaintiff's severe headaches during

14    the relevant time period.  *See, e.g.*, AR 48 (testifying at the 10/2/12 hearing: "I have serious

15    headaches all the time frequently."); AR 96 ("My headaches have worsened."); AR 580

16    (complaining of "headaches" on a 12/14/10 Function Report); AR 835-37 (noting in a 9/7/12

17    treatment record Plaintiff's complaints of persistent, daily headaches).

18         Despite Plaintiff's arguments based on the headaches and the corroborated evidence

19    discussed above, the ALJ's RFC formulation did not include any limitations from Plaintiff's

20    headaches, and did not include any analysis or reasoned explanation as to why such limitations

21    were not included.  The ALJ's failure to address the headaches issue was of legal significance and

22    ultimately harmful to Plaintiff, because this failure to address the headaches affected the

23    hypothetical questions posed to the Vocational Expert.  *See Hill v. Astrue*, 698 F.3d 1153, 1162

24    (9th Cir. 2012) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations,

25    then the expert's testimony has no evidentiary value to support a finding that the claimant can

26    perform jobs in the national economy.").

27         Accordingly, in light of the record and in view of applicable legal standards, the Court

28    finds that remand on this issue is, therefore, required.  *See Michaud v. Saul*, No. 18-CV-2625 JLS

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    (MDD), 2020 WL 114196, at *1-2 (S.D. Cal. Jan. 10, 2020); *Lord v. Colvin*, No. C13-1775-MJP,

2    2014 WL 4436924, at *7-8 (W.D. Wash. Sept. 8, 2014).

3    **II.    Sit/Stand Limitation**

4        Plaintiff next argues that the ALJ's finding regarding Plaintiff's sitting and standing

5    limitation is "conclusory" and "unsupported" by medical evidence or the overall record.  [Dkt. 16

6    at 8].  Specifically, the ALJ's written decision found that Plaintiff "requires the ability to alternate

7    between sitting and standing periodically throughout the workday as needed . . . to ensure there is

8    no exacerbation of back pain symptoms."  [AR 16].

9        It is not sufficient to show that an error exists in an RFC determination—a Plaintiff must

10   also show that the error is harmful (or not harmless).  "Generally, if the ALJ assesses a more

11   restrictive RFC, even if the ALJ erred in the assessment, the error is harmless because the

12   additional restriction is more favorable to the plaintiff."  *Clara Ann K. v. Saul*, No. 3:19-cv-01099-

13   BEN-NLS, 2020 WL 5658720, at *14 (S.D. Cal. Sept. 22, 2020); *Brown-Hunter v. Colvin*, 806

14   F.3d 487, 492 (9th Cir. 2015) ("Even when the ALJ commits legal error, we uphold the decision

15   where that error is harmless," such as when "it is inconsequential to the ultimate nondisability

16   determination.").  "Where harmfulness of the error is not apparent from the circumstances, the

17   party seeking reversal must explain how the error caused harm."  *McLeod v. Astrue*, 640 F.3d 881,

18   887 (9th Cir. 2011).

19       The Court agrees that the ALJ's sit/stand limitation is not artfully worded and also that

20   there is insufficient explanation as to the reason for the limitation.  However, Plaintiff offers no

21   explanation as to why he believes the ALJ's sit/stand finding was harmful.  Even assuming the

22   ALJ erred in giving Plaintiff a more restrictive sit/stand limitation, the ALJ's more restrictive RFC

23   reduced the number of potential jobs available in the national economy that Plaintiff could

24   perform.  A more restrictive RFC finding is, at least facially, favorable to Plaintiff.  That is, a

25   reduction in the number of potential jobs available (due to the sit/stand limitation) increases (and

26   does not decrease, on this record) the strength of the argument and thus the likelihood of a finding

27   that Plaintiff is disabled.  Because the error complained of here was, if anything, not harmful to

28   Plaintiff (and had the potential to be helpful to Plaintiff's arguments), the alleged error (even if

12

1    taken to be error) proved "inconsequential to the ultimate nondisability determination." *Leach v.*

2    *Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023) ("[W]e conclude that the error was harmless because

3    it was inconsequential to the ultimate nondisability determination."). The record shows that, even

4    when the ALJ used the more restrictive RFC with the complained of sit/stand limitation, the ALJ

5    still did not render a favorable disability finding. Put another way, Plaintiff here has not shown

6    how or why the ALJ could have reached a different disability finding had they used a less

7    restrictive RFC finding which excluded the sit/stand limitation. In this situation and on this

8    record, Plaintiff has not established why any error here ultimately harmed Plaintiff.

9            Accordingly, the Court finds no reversible error with respect to this issue because any error

10   with regard to the sit/stand limitation was harmless.

11   **III.    Whether the ALJ Erred in Evaluating Plaintiff's Subjective Allegations of Pain**

12           Plaintiff next challenges the ALJ's RFC findings, which are based on an evaluation of the

13   Plaintiff's subjective allegations regarding the intensity, persistence, and limiting effects of his

14   medically determinable impairments and the pain resulting therefrom, including a credibility

15   determination. [Dkt. 16 at 9-12].

16           "[S]ubstantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly

17   rejected [the claimant's] testimony as to the severity of his pain and symptoms.'" *Ferguson v.*

18   *O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028,

19   1035 (9th Cir. 2007)). The Ninth Circuit has established a two-part analysis for determining the

20   extent to which a claimant's symptom testimony must be credited. *Trevizo v. Berryhill*, 871 F.3d

21   664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented

22   objective medical evidence of an underlying impairment which could reasonably be expected to

23   produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison v.*

24   *Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). "If the claimant meets the first step of this analysis

25   and there is no evidence of malingering, [then in the second step] the ALJ can reject the claimant's

26   testimony about the severity of their symptoms only by offering specific, clear and convincing

27   reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

28           The "clear and convincing" standard requires the ALJ to "specifically identify" which

United States District Court
Northern District of California

1    portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence

2    undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting

3    *Treichler*, 775 F.3d at 1102) (remaining citations omitted).  "This is not an easy requirement to

4    meet: 'The clear and convincing standard is the most demanding required in Social Security

5    cases.'"  *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).

6         The ALJ has the responsibility to determine "credibility, resolve[s] conflicts in the

7    testimony, and resolve[s] ambiguities in the record."  *Lambert*, 980 F.3d at 1277 (quoting

8    *Treichler*, 775 F.3d at 1098).  The ALJ may not "reject a claimant's subjective complaints based

9    solely on a lack of medical evidence to fully corroborate the alleged severity of pain."  *Smartt*, 53

10   F.4th at 494 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  Nor may the ALJ

11   "justify a credibility finding 'by ignoring competent evidence in the record that suggests another

12   result.'"  *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 763

13   F.2d 1450, 1456 (9th Cir. 1984)).

14        Here, Plaintiff alleges disability from back impairment, visual impairment, and headaches.

15   In the written decision, the ALJ found that Plaintiff's impairments could reasonably have given

16   rise to the severe pain and functional limitations to which Plaintiff testified that he suffers.  [AR

17   17].  The ALJ's decision thus relied on evaluating the credibility of Plaintiff's testimony about

18   pain.  Under the Ninth Circuit's analytical rubric, the ALJ was accordingly required to make the

19   legally mandated subsidiary findings regarding Plaintiff's own testimony, *i.e.*, specifically identify

20   the testimony found not credible and explain what evidence supports that lack of credibility

21   finding.  Because the ALJ made no finding that Plaintiff was malingering, the ALJ was required to

22   set forth specific, clear, and convincing reasons in support of the adverse credibility finding.

23   *Garrison*, 759 F.3d at 1014-15.

24        In the written decision, the ALJ evaluated Plaintiff's credibility regarding his statements

25   about his symptoms and pain.  The ALJ found that the Plaintiff's testimony regarding the

26   intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the

27   medical evidence and other evidence in the record at all times relevant[.]"  [AR 17].  Specifically,

28   the ALJ provided the following justifications for not crediting Plaintiff's testimony: (1) that

United States District Court
Northern District of California

14

1    Plaintiff's testimony about symptoms was inconsistent with Plaintiff's own statements regarding

2    his activities of daily living, including his testimony regarding his 2016-2018 employment as a

3    warehouse worker; and (2) that Plaintiff's testimony regarding "significantly compromised

4    standing/walking tolerance" was "inconsistent" with Dr. Pon's examination and findings.  [AR

5    18].

6                    Plaintiff's Activities of Daily Living Including His 2016-2018 Warehouse Job

7                    Plaintiff argues that the ALJ's analysis of his subjective complaints was "incomplete and

8    inaccurate," because the ALJ relied heavily on the fact that Plaintiff "testified he was able to work

9    from 2016 to 2018 in a warehouse as a void filler, package filler, and crate stacker[,] . . . [and]

10   reported no problems walking or standing while working and he was able to successfully work at a

11   much higher exertional level than that called for in the [RFC] assessed herein."  [Dkt. 16 at 9

12   (citing AR 18)].  Plaintiff argues that the ALJ mischaracterized his testimony and omitted the fact

13   that he "did report a number of problems trying to perform" this work.  *Id.* at 10.  In addition,

14   Plaintiff argues that his earnings from the warehouse job were, in fact, "quite minimal."  *Id.*

15                   The ALJ's description of Plaintiff's 2016-2018 warehouse work either ignores, rejects as

16   not credible without explanation, or mischaracterizes aspects of Plaintiff's testimony regarding

17   difficulties performing the work.  *See Garrison*, 759 F.3d at 1016 (finding ALJ's selective

18   presentation of the claimant's reported daily activities erroneous, where the ALJ failed to note that

19   the claimant had to rest between activities, needed help to do the activities, and could not always

20   complete the activities given her pain); *A.P. v. Kijakazi*, No. 23-cv-01184-EMC, 2024 WL

21   116307, at *10 (N.D. Cal. Jan. 10, 2024) ("The ALJ cannot mischaracterize statements and

22   documents in the record or take these out of context in order to reach [her] conclusion on the

23   claimant's credibility.").

24                   Specifically, Plaintiff testified that he had difficulty standing; that he required numerous

25   breaks; and that he often would have to leave work early.  [AR 1158].  The ALJ's written decision

26   did not discuss these limitations on Plaintiff's ability to work the warehouse job, much less

27   provide clear, specific reasons for discounting them.  *See Revels v. Berryhill*, 874 F.3d 648, 668

28   (9th Cir. 2017) (holding that the ALJ erred by not providing "clear and convincing" evidence to

1    discredit the claimant on the basis of activities of daily living).  Based on the written decision, it is

2    unclear why the ALJ ignored this testimony, but it is clear that the ALJ did not set forth the legally

3    required analysis to demonstrate by clear and convincing evidence why the ALJ found this

4    testimony not credible.

5          Accordingly, the Court finds that remand on this issue is appropriate.

6          Dr. Pon's Opinion

7          Plaintiff also argues that the ALJ improperly discounted Plaintiff's subjective allegations

8    based on Dr. Pon's consultative examination report.  [Dkt. 16 at 11].  Specifically, Plaintiff takes

9    issue with the following sentences in the ALJ's written decision: "The claimant's reports of

10   significantly compromised standing/walking tolerance are inconsistent with the progress notes and

11   Dr. Pon's examination, showing little to no strength deficits affecting the lower extremities.  The

12   examinations do not any [sic] level of muscle atrophy or diminished muscle tone that would

13   suggest such limited standing or walking."  *Id.* (quoting AR 18).  Plaintiff does not argue that the

14   ALJ improperly evaluated Dr. Pon's opinion itself.  Rather, Plaintiff argues that the ALJ's reliance

15   on the opinion to discount Plaintiff's testimony was improper because (1) the ALJ provided "no

16   specific opinion or medial [sic] reason for why muscle atrophy or strength deficits or diminished

17   muscle tone are required to support allegations of pain and limitations with standing or walking;"

18   and (2) it is "not clear that Dr. Pon was fully aware of the severity of [Plaintiff]'s lumbar spine or

19   the actual surgeries performed."  *Id.*

20         The Court finds no error in the ALJ's reliance of Dr. Pon's opinion to discount Plaintiff's

21   symptoms testimony.  The ALJ articulated clear, specific reasons for the finding to the extent

22   relied upon by Dr. Pons's opinion.  The fact that Plaintiff would have weighed this evidence

23   differently is irrelevant.  *See Smartt*, 53 F.4th at 494 ("Where evidence is susceptible to more than

24   one rational interpretation, the ALJ's decision must be affirmed.").

25         Dr. Lewis's Opinion

26         Plaintiff also argues that the ALJ improperly and unfairly concluded that Dr. Lewis's

27   opinion regarding her 2022 one-time examination of Plaintiff was "not relevant" because it was

28   based on findings outside of the relevant time period, yet "offered no explanation for why the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   work activity in 2016-2018 was somehow relevant to the determination for disability for the

2   relevant period." [Dkt. 16 at 11-12].  As with Dr. Pon's opinion, Plaintiff does not argue that the

3   ALJ improperly evaluated the substance of Dr. Lewis's opinion.  Rather, quoting from *Taylor v.*

4   *Commissioner of Social Security Administration*, 659 F.3d 1228 (9th Cir. 2011), Plaintiff argues

5   that "[m]edical evaluations after the relevant time period . . . are relevant if they concern the

6   claimant's conditions during that period."  *Id.* at 12.

7           Plaintiff's reliance on *Taylor* is not persuasive because that case is distinguishable from the

8   situation here.  In *Taylor*, the Ninth Circuit found that the Appeals Council had improperly failed

9   to consider an evaluation and medical source statement that post-dated the ALJ's decision.  659

10  F.3d at 1233.  The doctor who created those records, however, had examined the claimant twice

11  during a five-year period prior to the expiration of his insured status, had supervised the nurse

12  practitioner who treated the claimant, and had approved the prescription of the claimant's

13  medications.  *Id.* at 1232.  The Commissioner in *Taylor* did not dispute that the doctor's opinion

14  concerned the claimant's impairments and limitations *during the period before his insured status*

15  *expired*.  *Id.*  Further, the Appeals Council in *Taylor* denied review without addressing the

16  doctor's opinion at all.  *Id.* at 1232-33.

17          Here, Plaintiff does not argue—and nor does the record show—that Dr. Lewis treated or

18  evaluated Plaintiff prior to the November 2012 ALJ decision date.  Dr. Lewis's opinion itself

19  explicitly states that it concerns, as of June 2022, "current limitations only." [AR 1124].  Dr.

20  Lewis did not provide *any* opinions concerning past limitations.  The doctor's opinion in *Taylor*

21  was based on examinations during the relevant period, concerning impairments during the relevant

22  period.  659 F.3d at 1232.  Unlike *Taylor*, Dr. Lewis's opinion here is solely based on an

23  examination performed after the relevant time period, concerning impairment outside the relevant

24  time period.

25          The Court finds no error in the ALJ's discounting of Dr. Lewis's opinion as not relevant

26  for the purposes Plaintiff relies upon.  The case law cited by Plaintiff is inapposite.  Accordingly,

27  the Court finds that Plaintiff has failed to show error based on Dr. Lewis's opinion which would

28  justify reversal or require a remand.  *Cf. Smith v. Berryhill*, No. 16-cv-03934-SI, 2017 WL

1    993072, at \*12-13 (N.D. Cal. Mar. 15, 2017) (finding no error in Appeal Council's refusal to

2    remand the case for consideration of similar evidence that fell outside of the relevant time period).

3    **IV.    Further Asserted Grounds for Reversal**

4        Plaintiff raises additional arguments regarding the sufficiency of the ALJ's step five

5    analysis.  [Dkt. 16 at 12-16].  Because remand is warranted based on the ALJ's failure to

6    adequately assess Plaintiff's RFC, there is no need to address these other arguments at this time.

7    *See Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for

8    reconsideration of step three, we do not reach the other arguments raised.").  Having already

9    ordered a remand (which will result in a record different from the current record under

10   consideration), it makes little practical sense to devote the Parties' and the Court's resources to

11   whether or not there are even more reasons for that same remand.

12       The Court expresses no opinion as to the merits of Plaintiff's other arguments not

13   specifically addressed herein.  Neither Party should construe the Court's restraint based on the

14   Court's authority (including notions of judicial economy and practicality) as tacit approval, or

15   disapproval, of how the evidence was considered.  This Order should not be read to suggest the

16   result that should be reached on remand, nor should the proceedings in this Court leading to this

17   Order (or the Order itself) be considered or construed as a waiver of any arguments.  Rather, upon

18   remand, the Parties and the ALJ are directed to fully consider the evidence and all issues in

19   dispute, based on the more fulsome record ordered.

20   **V.    Whether to Remand for An Award of Benefits**

21       When a court reverses an ALJ's decision, "the proper course, except in rare circumstances,

22   is to remand to the agency for additional investigation or explanation."  *Dominguez v. Colvin*, 808

23   F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1099).  Here, Plaintiff requests that

24   the Court remand the case for the payment of benefits, or alternatively, for further proceedings.

25   [Dkt. 16 at 18-19].

26       A remand for an award of benefits is proper, however, where (1) the ALJ has failed to

27   provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

28   opinion; (2) the record has been fully developed and further administrative proceedings would

United States District Court
Northern District of California

18

United States District Court
Northern District of California

1    serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the

2    ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d

3    995, 1020 (9th Cir. 2014) (quotation marks omitted).  Even if all three requirements are satisfied,

4    the Court retains flexibility to determine the appropriate remedy. *Id.* at 1020-21.

5           The first factor for remanding for an award of benefits is met because the ALJ failed to

6    provide sufficient legal reasons for discrediting Plaintiff's symptoms testimony.  The second

7    factor for a remand for an award of benefits is not met, however, because further proceedings are

8    necessary so that all of the medical evidence that is entitled to credit, and all of Plaintiff's

9    impairments, may be considered in formulating an appropriate RFC.  It is unclear whether the

10   third factor is met, because it is unclear on this record what would be an appropriate RFC (after

11   considering all of the evidence and issues that the ALJ's written decision omitted, as discussed

12   above) and thus unclear whether there are jobs in the economy for an individual with Plaintiff's

13   as-yet-unformulated RFC.  Because the factors for a remand for an award of benefits are not

14   satisfied here, the Court will instead remand for further proceedings.

15          Accordingly, the Court finds that remand for further proceedings is the appropriate course

16   of action here.

17                                        **CONCLUSION**

18          For the foregoing reasons, **IT IS ORDERED THAT:**

19   1.   The Commissioner's final decision in this matter is **REVERSED** and this case is

20        **REMANDED** to the Commissioner for further administrative proceedings consistent with

21        this Order.

22   2.   Plaintiff is awarded costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

23

24   **IT IS SO ORDERED.**

25   Dated:  March 31, 2025

26   _____

27   PETER H. KANG
     United States Magistrate Judge

28